IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ZACHARIAH A. KIMMEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No.  3:14-cv-01381-SMY-PMF |
| | ) |
| NURSE FRAILEY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATIONS**

**FRAZIER, Magistrate Judge:**

Before the Court is the Motion for Summary Judgment (Doc. 78)[1] filed by Defendants Melissa Frailey, Darlene Winter, Pam Franklin, Maryanne Schutt, Penny George, Leslie Kluge and Dr. Louis Shicker. These Defendants argue that Plaintiff Zachariah Kimmel failed to exhaust available administrative remedies prior to filing suit. Plaintiff filed a response in opposition (Doc. 82). Defendants Dr. Larson, Dr. Powers and Dr. Santos declined to assert the affirmative defense that the Plaintiff failed to exhaust administrative remedies. (*See* Doc. 41). Plaintiff originally filed this lawsuit pursuant to 42 U.S.C. § 1983 on December 15, 2014 claiming that various Illinois Department of Correction ("IDOC") and Wexford Health Sources, Inc., ("Wexford") employees violated his Eighth Amendment rights. On January 14, 2015 Judge Yandle conducted a merits review of the Plaintiff's complaint pursuant to 28 U.S.C. § 1915A. In the merits review order Judge Yandle held that the Plaintiff stated a colorable Eighth Amendment deliberate indifference to medical needs claim against the ten aforementioned

---

[1] The parties' pleadings did not present any genuine disputes of material fact and so the Court declined to hold a *Pavey* evidentiary hearing. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

1

Defendants. For the following reasons, it is RECOMMENDED that the Motion for Summary Judgment (Doc. 78) be DENIED.

The events that give rise to this litigation occurred while the Plaintiff was incarcerated at Vienna Correctional Center ("Vienna"). According to the complaint, on August 23, 2014 Kimmel injured his right foot while playing handball in the Vienna prison yard. (Doc. 1, p. 9). Following the injury Kimmel was transported to the Vienna observation unit. Over the next several days Kimmel was examined by Defendants Frailey, Winter, Kluge, Franklin and Dr. Santos. These Defendants diagnosed Kimmel with a sprained ankle.

On August 29, 2014 Kimmel was taken to Shawnee Correctional Center ("Shawnee") for a leg X-ray. Shawnee is located adjacent to Vienna and it houses a more comprehensive medical facility. The X-ray revealed that Kimmel's heel was fractured. Dr. Larson applied a splint to Kimmel's foot and Kimmel was sent back to Vienna. Kimmel states that around this time Dr. Larson, Dr. Santos and Dr. Powers were deliberately indifferent in treating his fractured heel.

Kimmel's condition worsened on September 1, 2014 when he slipped and fell in the Vienna observation unit, hitting his foot as he fell. Kimmel states that Defendant Schutt's treatment following the fall constituted deliberate indifference. On September 8, 2014 Kimmel was examined by Dr. Steven Young, a physician at the Orthopedic Institute of Southern Illinois. Dr. Young told Kimmel that surgery was now inappropriate, but he provided Kimmel with an air cast and a prescription for painkillers. Kimmel states that the healthcare providers at Vienna, then refused to comply with Dr. Young's treatment plan. Penny George, the health care administrator at Vienna was also aware of the situation but did not take corrective action. On September 14, 2014 Kimmel contacted Dr. Louis Shicker, the IDOC medical director regarding his medical treatment. Kimmel asserts that Dr. Shicker's response also constituted deliberate

indifference. Kimmel finally left the observation unit and returned to general population in late 2014. (Doc. 1, p. 9).

Defendants Melissa Frailey, Darlene Winter, Pam Franklin, Maryanne Schutt, Penny George, Leslie Kluge and Dr. Louis Shicker now seek summary judgment on the basis that the plaintiff failed to exhaust administrative remedies prior to filing suit. Summary judgment will be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The reviewing court must construe the evidence in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Inmates bringing an action under 42 U.S.C. § 1983 with respect to prison conditions must first exhaust all administrative remedies that may be available to them before filing a lawsuit. *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). The Seventh Circuit has taken a strict compliance approach to exhaustion. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Inmates must follow all grievance rules established by the correctional authority. *Id*.

For non-emergency grievances, the Illinois Department of Corrections ("IDOC") has a three-step process that prisoners are required to follow in order to exhaust administrative remedies. At step one, the prisoner must first attempt to resolve the dispute through his or her grievance counselor. *See* 20 Ill.Admin.Code § 504.810.

At step two, if the prisoner is unable to resolve the dispute through his or her counselor, the prisoner may file a written grievance with the prison Grievance Officer within sixty (60) days of discovery of the dispute. *Id*. The Grievance Officer then considers the grievance and reports

3

his or her findings and recommendations in writing to the Warden (also known as the Chief Administrative Officer or "CAO"). *See* 20 Ill.Admin.Code § 504.830.

The third and final step of the exhaustion process is an appeal to the Administrative Review Board ("ARB"). After receiving a response from the CAO at step two, the prisoner has thirty (30) days from the date of the response to appeal to the ARB. 20 Ill.Admin.Code § 504.850. The Director of IDOC and the ARB are required to make a "final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances." *Id*. Administrative remedies may usually be deemed fully exhausted after the prisoner receives a copy of the ARB's decision at step three.

The process for emergency grievances is slightly different. Emergency grievances are forwarded directly to the Warden, and "if the [Warden] determines that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender, the grievance shall be handled on an emergency basis." 20 Ill. Admin. Code § 504.840. If the CAO makes a determination that the grievance is not of an emergency nature the plaintiff may appeal the CAO's decision directly to the ARB. 20 Ill. Admin. Code. § 504.840, *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir.2005). The plaintiff is not required to resubmit an emergency grievance through the normal non-emergency process. *See Id.*; *Glick v. Walker*, 385 F. App'x 579, 583 (7th Cir. 2010) ("In *Thornton* … we explained that an inmate who seeks emergency review under § 504.840 has no obligation to resubmit the grievance through normal channels, even if the warden concluded that expedited review was unnecessary.").

In the present case, Kimmel filed an assortment of grievances in late 2014 regarding his medical treatment and prison conditions. In the interest of brevity, the Court will focus on the grievances that Kimmel did exhaust. On September 1, 2014 Kimmel filed three grievances

4

stating that the crutches provided to him at the health care unit were broken (Grievance 14-09-016), that he was not being given appropriate medication (Grievance 14-09-17) and that he was denied use of the disabled accessible bathrooms (Grievance 14-09-18). On September 5, 2014 Kimmel filed a grievance complaining that his foot was being improperly treated (Grievance 14-09-19). These four grievances were denied at the institutional level on October 3, 2014. (Doc. 79-7, ps. 2, 4, 8, 10). Pursuant to IDOC regulations, if Kimmel wanted to appeal these denials, he was required to submit them to the ARB within 30 days. 20 Ill. Admin. Code § 504.840. 30 days after October 3, 2014 falls on Sunday November 2. The ARB received Kimmel's appeal of those grievances on November 5, 2014. On November 25, 2014 the ARB denied Kimmel's appeal as untimely because it was received past the 30 day deadline. (Doc. 79-7, p. 1).

      The ARB's denial strikes the court as an unreasonably harsh application of the 30 day deadline, contrary to IDOC regulations and contrary to the "prison mailbox rule." The applicable IDOC regulation states:

> If, after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached.

20 Ill. Admin. Code § 504.850(a). Kimmel's ARB denial form states that the grievances to be appealed were "not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further." However the regulations suggest that an inmate submits an appeal when he drops it into the prison mailbox. The regulation does not require the ARB to *receive* the appeal within 30 days of the Warden's decision. Moreover, the ARB's November 5

receipt of Kimmel's appeal is wholly consistent with Kimmel submitting the appeal by November 2.

Additionally, when construing prisoner filing deadlines federal courts generally apply the "prison mailbox rule." *Taylor v. Brown*, 2014 WL 9865341 (7th Cir. June 2, 2015). Pursuant to the rule, an inmate's document is deemed filed when it is placed in the prison mail system. When applying the rule to Kimmel's grievance appeals, the appeals would be deemed timely so long as Kimmel dropped the appeals in the prison mailbox no later than Sunday November 2, 2014. Under the rule, the only circumstance in which Kimmel's appeal could be untimely is if Kimmel submitted his appeal on Monday November 3 or Tuesday November 4, and the ARB received the grievance on Wednesday November 5. In sum, Kimmel's four grievances (Grievance 14-09-16, 17, 18, and 19) were timely filed.

However, these were not the only timely filed grievances. On September 9, 2014 Kimmel drafted a grievance complaining that he was not receiving appropriate medication and that the health care employees were retaliating against him. (Doc.79-8, p. 3). The ARB denied the grievance on the merits on November 2, 2014. (Doc.79-8, p. 1). On October 27, 2014 the ARB denied Kimmel's appeal of two emergency grievances. (Doc. 79-11, p. 1). The grievances concern the unsafe floor at the Vienna health care unit, Kimmel's broken crutches and his medical treatment. The Vienna Warden deemed the grievances to be non-emergencies and the ARB directed Kimmel to resubmit the grievances through the nom-emergency process. Despite the ARB's directions, Kimmel sufficiently exhausted the administrative process for those two grievances. *See Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir.2005).

Although Kimmel did exhaust administrative remedies for these grievances, the Defendants argue that the grievances filed lack the requisite specificity. IDOC regulations state that:

> The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code § 504.810(a). The grievance from itself also states that the inmate is to "provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved." (Doc. 79-6, p. 2). Here, Kimmel's grievances are not models of specificity but they are sufficient for the purposes of IDOC regulations. Kimmel's grievances include enough descriptive information that the Defendants could be ascertained if IDOC officials investigated the matter. Under these circumstances it would be unreasonable to demand that Kimmel navigate the IDOC bureaucratic morass and identify on a grievance form the specific individuals responsible for denying him medical treatment. Thus, Kimmel satisfied the IDOC administrative remedies process.

## RECOMMENDATIONS

Plaintiff Zachariah Kimmel exhausted available administrative remedies and the motion for summary judgment filed by Defendants Melissa Frailey, Darlene Winter, Pam Franklin, Maryanne Schutt, Penny George, Leslie Kluge and Dr. Louis Shicker should be denied.

**SO RECOMMENDED.**

**DATED:  July 16, 2015  .**

*s/ Philip M. Frazier*
**PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE**